**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MICHAEL MULNIX,

      Petitioner,

v.                            Case No. 8:03-CV-500-T-30MSS

WALTER A. MCNEIL[1],

      Respondent.

_____/

## ORDER

Petitioner, a State of Florida inmate proceeding *pro se*, petitions for the writ of habeas

corpus pursuant to 28 U.S.C. § 2254 and challenges the validity of his conviction[2] for second

degree murder (Dkt. #15).  Petitioner's Section 2254 petition was denied (Dkt. #33) and

Petitioner appealed.  The United States Court of Appeals for the Eleventh Circuit issued a

certificate of appealability[3] (Dkt. #43).  The Eleventh Circuit found that Petitioner's federal

---

[1]  Walter A. McNeil, Secretary of the Florida Department of Corrections, is substituted as the party respondent. Fed. R. Civ. P. 25(d).

[2]  Petitioner filed a direct appeal in which he claimed, *inter alia*, that there was insufficient evidence to support his second-degree murder conviction (Dkt. #11, Ex. 1).  The state district court of appeal affirmed in a *per curiam* decision without written opinion ((Dkt. #11, Ex. 3).

[3]  The Eleventh Circuit granted a certificate of appealability on the following issue:

Whether the district court erred in denying appellant's second claim raised in his first amended 28 U.S.C. § 2254 petition as procedurally barred.

(Dkt. #43).

due process challenge to the sufficiency of the evidence was exhausted[4] and that this claim was not procedurally barred.  Consequently, the case was remanded solely for consideration of Petitioner's due process challenge to the sufficiency of the evidence used to convict him in state court.[5]

## Standard of Review

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

---

[4]  Petitioner presented this claim as ground two of his amended federal habeas petition. (Dkt. #15).  The claim was denied (Dkt. #33) as procedurally defaulted because Petitioner failed to present a federal question to the state appellate court on direct appeal.

[5]  Specifically, the Eleventh Circuit found, in part, as follows:

In 1998, petitioner-appellant Michael Mulnix was convicted of second degree murder.  After completing his direct appeal, Mulnix filed a timely *pro se* habeas petition under 28 U.S.C. § 2254.  The district court denied the petition for habeas relief.  Although Mulnix had exhausted his state court remedies with respect to a sufficiency of the evidence challenge under state law, the district court concluded he had not fairly presented a federal sufficiency of the evidence claim on direct appeal.

. . .

[W]e conclude that, under the particular facts and circumstances of this case, Mulnix's federal due process challenge to the sufficiency of the evidence was exhausted and thus is not procedurally barred.

. . .

In this case, . . . Mulnix's federal claims were not merely similar [to his state law claims]: they were identical. . . . [T]he state court analyzed Mulnix's due process sufficiency of the evidence claim using a standard identical to the one required under federal law.  Under these circumstances, we conclude Mulnix's federal claim has been exhausted.

(Dkt. #46).

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). *Accord Brown v. Head*, 272 F.3d

1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

Petitioner has the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). Petitioner's petition is subject to the provisions of the AEDPA because his conviction was entered after the AEDPA was enacted.  Consequently, a presumption of correctness attaches to the finding of fact in the trial court's rejection (Dkt. #11, Ex. 3) of Petitioner's due process challenge to the sufficiency of the evidence used to convict him.

### Discussion

Petitioner alleges that the State failed to produce sufficient evidence to sustain his conviction for second-degree murder.  Petitioner contends that the State "presented absolutely no evidence demonstrating the 'depraved mind without regard for human life'[6] required to establish the third element of second degree murder" (Dkt. #16, p. 12).  To prove the crime of second-degree murder, the State must prove three elements beyond a reasonable doubt: (1) the victim is dead; (2) the death was caused by the criminal act of the defendant;

---

[6] Florida law defines second-degree murder as "the unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual."  Fla. Stat. § 782.04(2).

and (3) there was an unlawful killing of the victim by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life.  Fla. Std. Jury Inst. 7.4.[7]

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime."  *In re Winship*, 397 U.S. 358, 364 (1970).  In a challenge to a state criminal conviction brought pursuant to Section 2254, a petitioner is entitled to habeas relief on a claim of insufficient evidence "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.'"  *Jackson v. Virginia*, 443 U.S. at 318-19 (*quoting Woodby v. INS*, 385 U.S. 276, 282 (1966) (emphasis in original)).  Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

---

[7]  The standard jury instruction provides the following definitions:

An "act" includes a series of related actions arising from and performed pursuant to a single design or purpose.

An act is "imminently dangerous to another and demonstrating a depraved mind" if it is an act or series of acts that:

    1.  a person or ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and

    2.  is done from ill will, hatred, spite or an evil intent, and

    3.  is of such a nature that the act itself indicates an indifference to human life.

In order to convict of second degree murder, it is not necessary for the State to prove the defendant had an intent to cause death.

Fla. Std. Jury Inst. 7.4.

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319 (emphasis in original).

Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law. *Jackson v. Virginia*, 443 U.S. at n. 16. "Although each element of the offense must be established beyond a reasonable doubt, *see Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990) (*citing Jackson [v. Virginia]*, 443 U.S. at 316) the State is not required to rule out every hypothesis except that of the guilt of the defendant, *see Jackson [v. Virginia]*, 443 U.S. at 326)." *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). If the record contains facts supporting conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the State and against the defendant. *Johnson v. Alabama*, 256 F.3d at 1172. In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and weighing the evidence. *Johnson v. Alabama*, 256 F.3d at 1172 (*citing Jackson v. Virginia*, 443 U.S. at 326).

At trial, Alena Silva ("Silva"), Petitioner's girlfriend and eyewitness to the attack upon the victim, testified[8] that in the evening hours of July 15, 1997, Petitioner and the victim were engaged in a "ruckus" outside her house[9] (Dkt. #11, Ex. 6, p. 76). The victim and Petitioner came into the house where they continued arguing. Sometime later, after

---

[8] Silva, a State's witness, was treated as a hostile witness and questioned by the prosecutor about two prior statements she had given to the police and the State Attorney's Office. Silva's testimony conflicted, on various issues, with these prior statements. (Dkt. #11, Ex. 6, p. 79-114).

[9] Petitioner and Silva resided together at the time of the offense.

consuming cocaine, the victim grabbed Petitioner "in a chokingly manner" (Dkt. #11, Ex. 6, p. 82).  Petitioner elbowed the victim and pushed the victim across the room.  Petitioner retrieved a baseball bat and hit the unarmed victim in the head while the victim was trying to exit the apartment.  (Dkt. #11, Ex. 6, p. 90, 95).  The victim was knocked unconscious. Petitioner dragged the victim out of the house onto the front lawn where the victim regained consciousness and returned to Silva's house with Petitioner.  (Dkt. #11, Ex. 6, p. 99). Petitioner and the victim left the house 2-3 hours later.  After the Petitioner returned home, he and Silva used paper towels and toilet paper, "something that could be flushed down the toilet right away," to clean up the victim's blood (Dkt. #11, Ex. 6, p. 102).  Silva learned of the victim's death through a newspaper article several days later[10] (Dkt. #11, Ex. 6, p. 106).

Detective John Tillia ("Tillia") of the Pinellas County Sheriff's Office testified on direct examination that Petitioner admitted during a police interview[11] that he had had an altercation with the victim and that Petitioner had hit the victim in the head with a baseball bat (Dkt. #11, Ex. 6, p. 42).  Tillia testified that Petitioner admitted he had the option of not picking up the baseball bat and hitting the victim and that Petitioner admitted the victim was unarmed (Dkt. #11, Ex. 6, pp. 43-44).

---

[10]  The victim's body was discovered several days later in a backyard approximately one mile from the Petitioner's residence (Dkt. #11, Ex. 6, p. 49).

[11]  Tillia testified that he read Petitioner his *Miranda* rights at the police station and that Petitioner signed a Rights Advisement Form indicating he understood those rights (Dkt. #11, Ex. 6, pp. 39-41).  *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Associate Medical Examiner Dr. Marie Hansen ("Hansen") testified the victim suffered a skull fracture and died as a result of blunt force trauma to his head (Dkt. #11, Ex. 6, pp. 129-30). Hansen opined that the victim's fatal injury was consistent with being struck in the head with a baseball bat (Dkt. #11, Ex. 6, p. 130).

After the State rested its case, defense counsel moved for a judgment of acquittal, asserting that the State failed to establish the elements set forth in the jury instruction for second-degree murder (Dkt. #11, Ex. 6, pp. 154-55). The motion was denied (Dkt. #11, Ex. 6, p. 156). Thereafter the defense rested its case without calling witnesses or presenting evidence.[12]

Viewing the State's evidence of petitioner's guilt in the light most favorable to the State, it is objectively reasonable to conclude that a rational trier of fact could find Petitioner committed second-degree murder, the crime for which he stands convicted. The state appellate court's silent affirmance[13] of Petitioner's conviction was neither an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts.

It is therefore ORDERED AND ADJUDGED that:

---

[12] The jury was instructed on second-degree murder, manslaughter, and justifiable use of deadly force (Dkt. #11, Ex. 6, pp. 64-69).

[13] The state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).

Page 8 of 9

1.      Petitioner's amended petition for the writ of habeas corpus (Dkt. #15) is

DENIED.

2.      The Clerk is to enter judgment for Respondent and close this case.

**DONE** and **ORDERED** in Tampa, Florida on January 28, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record